ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR FINANCE OF AMERICA STRUCTURED SECURITIES ACQUISITION TRUST 2019-HB1**<br><br>Apelado<br><br>v.<br><br>**SUCESIÓN LUZ MARÍA TORRES VALENTÍN t/c/c LUZ M. TORRES VALENTÍN t/c/c LUZ TORRES VALENTÍN t/c/c LUZ M. TORRES compuesta por ED NOEL DE LEÓN TORRES como miembro de la sucesión y otros**<br><br>Apelante | KLAN202500401 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Humacao**<br><br>Civil Núm.: **HU2023CV00636**<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.[1]

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Comparece ante este foro revisor, el Sr. Ed Noel De León Torres (señor De León Torres o parte apelante) y nos solicita que revoquemos la *Sentencia* emitida el 12 de marzo de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de Humacao. Mediante el referido dictamen, el TPI declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por Wilmington Savings Fund Society, FSB, Not Individually But Solely As Trustee For Finance Of America Structured Securities Acquisition Trust 2019-HH1

---

[1] *Véase* Orden DJ 2024-062C, sobre enmienda a la orden de designación de Paneles en el Tribunal de Apelaciones.

(Wilmington o parte apelada) y, en consecuencia, ordenó al señor De León Torres a pagar a Wilmington la suma de principal de $146,151.72, más los intereses sobre dicha suma en la cantidad de $32,416.49, los cuales continúan acumulándose a razón de 5.060%, más la suma estipulada de $18,900.00, para gastos, costas y honorarios de abogado. A su vez, determinó que, en el caso de que el señor De León Torres no hiciera efectivo el pago de las sumas adeudadas, se ordenaría la ejecución y venta en pública subasta del bien inmueble garantizado hipotecariamente.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

## I.

El 11 de mayo de 2023, Wilmington incoó *Demanda* sobre ejecución de hipoteca por la vía ordinaria en contra del señor De León Torres. En esta, adujo que, el 18 de diciembre de 2010, la Sra. Luz María Torres Valentín (señora Torres Valentín) suscribió y emitió un pagaré hipotecario en consideración a un préstamo revertido (*reverse mortgage*). Alegó que mediante el referido negocio se pactó el pago de una suma equivalente al diez por ciento (10%) del principal original para costas, gastos y honorarios de abogado en caso de reclamación por la vía judicial. Además, manifestó que declaró vencida la totalidad de la deuda, ya que el fallecimiento de la deudora obligacional, así como el incumplimiento de los términos y condiciones de la Hipoteca —al dejar de mantener la propiedad asegurada y no pagar los impuestos sobre la misma— constituían causas para acelerar el préstamo. Por lo cual sostuvo que, a la fecha de 31 de mayo de 2023, se le adeudaba la suma principal de $146,151.72, más los intereses sobre dicha suma en la cantidad de $32,416.49, los cuales continuaban acumulándose a razón de 5.060%, más la suma estipulada de $18,900.00, para gastos, costas y honorarios de abogado.

Posteriormente, el 16 de octubre de 2023, el señor De León Torres presentó *Contestación a Demanda.* Allí, en síntesis, alegó que era heredero de la señora Torres Valentín y que era el titular de la propiedad objeto de la acción de epígrafe pues su derecho quedó debidamente inscrito en el Registro de la Propiedad. Asimismo, adujo que Wilmington no le ofreció alternativas con el fin de proveer una solución viable para evitar la pérdida de su residencia principal.

Ahora bien, el 1 de noviembre de 2023, Wilmington instó *Moción de Referido a Mediación,* la cual fue a su vez atendida por el foro primario a través de la *Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipotecas para atenderse mediante videoconferencia.* Sin embargo, el 20 de diciembre de 2023, el Centro de Mediación de Conflictos presentó moción informando que el señor De León Torres no había aceptado participar del proceso de mediación.

Así las cosas, el 15 de febrero de 2024, Wilmington presentó *Moción de Sentencia Sumaria.* En esta, aseguró que no existía controversia en cuanto a que la deudora obligacional había fallecido, incumpliendo con los términos del pagaré y la hipoteca. A su vez, aseveró que el pagaré disponía que el acreedor podría requerir el pago inmediato de las sumas adeudadas aseguradas por la hipoteca si el deudor fallecía y la propiedad no era la residencia principal de al menos un deudor sobreviviente. Por lo que, concluyó que, tras haber declarado la totalidad de la deuda vencida, el señor De León Torres le adeudaba la suma del principal, los intereses que se acumularan hasta el pago total de la deuda, los honorarios de abogados pactados, costas y gastos del proceso judicial. Afirmó que dicha deuda estaba vencida y era líquida y exigible.

Luego de varias incidencias procesales innecesarias pormenorizar, el 22 de octubre de 2024, el señor De León Torres instó su *Solicitud en oposición a: "Moción de Sentencia Sumaria".* Allí

señaló que existía controversia en cuanto a los siguientes tres aspectos: 1) si la señora Torres Valentín sabía firmar en el momento en que otorgó la escritura de hipoteca invertida; 2) si la señora Torres Valentín otorgó válidamente la escritura de *reverse mortgage* y; 3) si Wilmington y el Registrador siguieron el procedimiento establecido para la corrección de asientos en el Registro de la Propiedad.

Luego de que el foro primario le permitiera presentar escrito en réplica, el 22 de noviembre de 2024, Wilmington presentó su *Réplica a Solicitud en Oposición a "Moción De Sentencia Sumaria"*. En esencia, argumentó que, como el señor De León Torres adquirió en calidad de heredero, esto incluía las cargas que pudiera haber suscrito la señora Torres Valentín, por lo que la inscripción de la escritura de hipoteca no afectaba sus derechos como titular. Además, señaló que el señor De León Torres no era un tercero registral sino un adquirente a título gratuito, de forma que solo gozaba de la protección registral que correspondía a la señora Torres Valentín.

Asimismo, 2 de diciembre de 2024, el señor De León Torres instó dúplica mediante la cual reiteró que presentó su derecho hereditario previo a la escritura de hipoteca. Así, aseveró que ante la dejadez del banco en presentar la hipoteca y tras confiar en las constancias del Registro, presentó e inscribió su derecho antes que el Banco volviera a presentar sus escrituras de hipoteca. De forma que razonó que su inscripción precedió las del banco y, por tal razón, era su inscripción la que requería corrección y no los asientos caducados como sostenía Wilmington.

Trabada así la controversia, el 21 de enero de 2025, el foro primario emitió *Resolución* declarando *No Ha Lugar* la solicitud de sentencia sumaria presentada por Wilmington. Fundamentó su denegatoria en que, según fuera alegado por el señor De León Torres

y conforme a la Ley Núm. 169-2016, según enmendada, existía un deber de informar sobre el incumplimiento de la obligación antes de proceder con la demanda. En ese sentido, esbozó que el acreedor de un préstamo hipotecario en atraso, antes de iniciar un proceso legal que pueda culminar en una causa de acción en cobro de dinero y ejecución de hipoteca, debe ofrecer al deudor la alternativa de mitigación de daños, también conocida como *loss mitigation*, o brindar la posibilidad de realizar un cambio a su préstamo, ya sea a través de un plan de pago especial, modificación de hipoteca, *short sale* o venta en corto y entrega voluntaria entre otros. Así, razonó que Wilmington estaba impedido de iniciar una acción legal en contra del señor De León Torres sin antes haber cumplido con dicha exigencia legal y concluyó que, debido a que no surgía del expediente que Wilmington hubiese cumplido con esta, dicha controversia debía ser dilucidada previo a emitir una determinación final.

Inconforme con la referida decisión, el 5 de febrero de 2025, Wilmington presentó *Moción de Reconsideración*. En esta, adujo que el proceso se realizó conforme a derecho ya que previo a demandar envió una carta de aceleración al señor De León Torres, la cual le notificaba distintas alternativas y la intención de demandar. Asimismo, sostuvo que este no participó del proceso de *loss mitigation* y tampoco tuvo interés de participar en el proceso de mediación.

En respuesta, el señor De León Torres presentó su *Solicitud en Cumplimiento de Orden & en Oposición a la Moción de Reconsideración*. Mediante la misma, se limitó a cuestionar asuntos relacionados a la liquidez de la deuda. Luego, Wilmington presentó su *Moción de Réplica a Oposición de Reconsideración*.

Así las cosas, el 12 de marzo de 2025, notificada el 13 del mismo mes y año, el foro *a quo* emitió la *Sentencia* que hoy revisamos. Conforme adelantado, el TPI declaró Ha Lugar la *Moción*

*de Sentencia Sumaria* incoada por Wilmington. Además, decretó que, en el caso de que el señor De León Torres no realizara el pago de las sumas adeudadas, ordenaba la ejecución y venta en pública subasta del bien inmueble garantizado hipotecariamente. En su dictamen, el Tribunal consignó las siguientes determinaciones de hechos materiales sobre los cuales no existía controversia:

1. El 18 de diciembre de 2010, la Sra. Luz María Torres Valentín t/c/c Luz M. Torres Valentín t/c/c Luz Torres Valentín t/c/c Luz M. Torres suscribió y emitió un Pagaré Hipotecario a favor de Urban Financial Group, o a su orden, por la suma de $189,000.00 de principal, más intereses a razón de 5.060% anual de interés anual sobre el balance adeudado ("el pagaré").

2. Para garantizar el pago de dicho Pagaré, se constituyó una hipoteca voluntaria, mediante la Escritura Número 338 el día 18 de diciembre de 2010, ante el Notario Fernando E. Doval Santiago.

3. El Pagaré y la Escritura de Hipoteca fueron firmados por la testigo instrumental, Sonia Cruz Cruz y por la deudora.

4. La Escritura de Hipoteca en su inciso décimo reza así:

   —DÉCIMA. DEUDOR: El(Los) Deudor (es) es (son): ---LUZ MARÍA TORRES VALENTÍN mayor de edad, soltera, propietaria y vecina de Humacao, Puerto Rico, de quien - doy fe de conocer personalmente.- ---Está presente, además, el siguiente testigo instrumental, rogado por Luz María Torres Valentín, quien ha expresado no saber leer, y de su propia y libre determinación: SONIA CRUZ CRUZ, mayor de edad, soltera, propietaria y vecina de Humacao, Puerto Rico, quien es testigo idóneo, sabe leer y escribir, y es domiciliada en Puerto Rico y no se encuentra incursa en ninguna de las causas de incapacidad absoluta o relativa para poder comparecer como testigo instrumental en el otorgamiento de este instrumento público.------------

5. En la parte de ACEPTACIÓN de la escritura de hipoteca se establece lo siguiente:
   —El (Los) Deudores aceptan) esta escritura en su totalidad y yo, el Notario Público, hice a los comparecientes las advertencias legales pertinentes relativas a este otorgamiento. Yo, el Notario Público, advertí a la(s) parte(s) comparecientes) de su derecho a tener testigos presentes en este otorgamiento, al cual derecho renunciaron, excepto según se indica aquí. Habiendo el (los) compareciente(s) leído esta escritura en su totalidad, la ratifican [t]otalmente y confirman que las declaraciones contenidas en la misma reflejan fiel y exactamente sus estipulaciones. Términos y condiciones.

La compareciente Luz María Torres Valentín manifiesta no saber leer y por (tal razón comparece a su ruego como testigo instrumental SONIA CRUZ CRUZ, mayor de edad, soltera, propietaria y vecina de Humacao, quien sabe leer y escribir y de quien doy fe de conocer personalmente y por sus dichos la doy también de su edad, estado civil, ocupación y vecindad, así como de que a mi juicio no tiene impedimento legal para servir como testigo instrumental en el otorgamiento de esta escritura y Yo, el Notario, hago constar que he procedido a dar lectura en voz alta de la presente escritura y que también fue leída en voz alta por Sonia Cruz Cruz, testigo instrumental designado para ello por Luz María Torres Valentín, quien habiendo manifestado que está conforme a su voluntad, procede a firmar esta escritura ante mí, el Notario Público, y fija sus inicial(es) en cada uno de los folios de esta escritura y la testigo instrumental procede a poner sus iniciales al lado de éstas y su firma al final. Yo, el Notario, doy fe de que en el presente otorgamiento se ha observado unidad de acto. así como de todo lo aquí consignado.------------------------------------------

6. La Escritura de Hipoteca establece las formalidades requeridas por ley en cuanto a las capacidades de los otorgantes, testigos instrumentales, unidad de acto y lectura y establece que la deudora no sabe leer solamente.

7. La Escritura de Hipoteca grava el bien inmueble que se describe a continuación:

   URBANA: Parcela de terreno sin nombre especial radicada en el Barrio Mabú del término municipal de Humacao, que mide 15 metros 86 centímetros, por el Norte; en 15 metros 70 centímetros, por el Sur; en 20 metros 66 centímetros, por el Este, y 18 metros 37 centímetros, por el Oeste; colindante por el frente, o sea el Sur, con una calle sin nombre; por la derecha entrando, o sea, el Este, con el resto de la finca principal de donde se segrega esta parcela; por la izquierda, o sea, el Oeste, también con el resto de la finca principal; y por el fondo, o sea el Norte, con terrenos de la sucesión Frías.

   Según su inscripción 2da, enclava garaje con piso de concreto y techado y forrado en zinc, que mide por el frente 3 metros y 6 metros de fondo.

   Según su inscripción 3ra, expresa que según documento, colinda por el frente, o sea Sur, con la Avenida Padre Rivera, por la derecha entrando, con la sucesión de Domingo Perez, y por la izquierda, con propiedad de Ramón L. Vega, y por el Norte, con terreno de la sucesión Antonio Roig Sucesores, y que en esta finca enclava además una casa de madera extranjeras, techada de zinc con balcón al frente de concreto, que mide 17' de frente por 30' de fondo, con un anexo de 8' por cada lado, donde estaban las instalaciones sanitarias, teniendo la casa, sala, comedor, tres dormitorios y cocina, con instalaciones de luz y siendo el solar de 307.56 metros cuadrados.

8. La hipoteca consta inscrita al sistema Karibe de Humacao, finca 2062, inscripción 12ma, Registro de la Propiedad de Puerto Rico, Sección de Humacao.

9. La propiedad consta inscrita al folio 160 del tomo 62 de Humacao, finca 2062; Registro de la Propiedad de Puerto Rico, Sección de Humacao.

10. El inciso 6 del Pagaré dispone lo siguiente:

   "El Acreedor Hipotecario puede requerir el pago total inmediato de todo el principal adeudado e interés acumulado si: (i) Un deudor muere y la propiedad no es la residencia principal de al menos un Deudor sobreviviente [...]."

11. El sub inciso 9 (a) (i) d de la Escritura de Hipoteca, dispone que el acreedor puede requerir el pago inmediato de las sumas adeudadas aseguradas por la hipoteca si el deudor fallece y la propiedad no es la residencia principal de al menos un deudor sobreviviente.

12. La deudora obligacional del Pagaré, Luz María Torres Valentín, falleció el 2 de marzo de 2022.

13. La deudora obligacional otorgó Testamento Abierto.

14. La parte demandante es tenedora de buena fe del Pagaré Hipotecario objeto de ejecución, y es la persona con derecho a exigir el cumplimiento de la obligación conferida mediante dicho Pagaré y Escritura de Hipoteca.

15. La parte demandada es el titular de dicha propiedad adquirida por herencia, la cual constituye su vivienda principal.

Inconforme, el señor De León Torres presentó *Solicitud de Reconsideración & de Determinaciones de Hecho Adicionales*, a la cual Wilmington replicó mediante *Moción en Oposición a Solicitud de Reconsideración y de Determinaciones de Hechos Adicionales*. Empero, el 7 de abril de 2025, el foro primario denegó conceder la reconsideración.

Aun en desacuerdo, el 7 de mayo de 2025, el señor De León Torres acudió ante este foro revisor señalando los siguientes errores:

Erró el foro a quo, al limitar la notificación de la corrección de asientos de la Ley del Registro de la Propiedad solamente a terceros registrales.

Erró el foro a quo, al conceder la sentencia sumaria cuando la demanda era ilíquida por no cumplirse con el crisol de las regulaciones federales.

Erró el foro a quo a[l] ordenar el pago al demandante de suma de principal de $146,151.72, más los intereses

sobre dicha suma en la cantidad de $32,416.49, los cuales continúan acumulándose a razón de 5.060%, más la suma estipulada de $18,900.00, para gastos, costas y honorarios de abogado y ante la eventualidad de que la parte demandada no haga efectivo el pago de las sumas adeudadas, se ordena la ejecución y venta en pública subasta del bien inmueble garantizado hipotecariamente hasta tanto dicha propiedad responda y que sea vendida libre de cualquier carga o gravamen posterior al crédito aquí ejecutado, cuando el préstamo reverse es uno "without recourse".

El 5 de junio de 2025, la parte apelada, Wilmington, compareció mediante *Oposición a 'Recurso de Apelación'*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**A**.

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[2] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho,

---

[2] Véase, además: *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra

documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4.

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de

la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

### III.

Por tratarse de una sentencia sumaria, esta Curia debe evaluar *de novo* las solicitudes a favor y en contra de tal proceder, en unión a la documentación que surge del expediente. Así pues, examinamos la *Moción de Sentencia Sumaria* presentada por Wilmington y la *Solicitud en Oposición a: "Moción de Sentencia Sumaria"* del señor De León Torres.

Tras una lectura detenida de ambos escritos se desprende que el señor De León Torres incumplió con varios requisitos de forma

como, por ejemplo, no hacer referencia a los párrafos que enumeró Wilmington en su relación de hechos que están en controversia. Sin embargo, ambas partes describieron el asunto de derecho que está en controversia, desglosaron aquellos hechos que, en su opinión, no están en controversia e hicieron referencia a la prueba documental.

Así las cosas, la Regla 36 de Procedimiento Civil, *supra*, confiere a este Tribunal discreción para atender solicitudes de sentencia sumaria que incumplan con ciertos requisitos. A juicio de este Tribunal, la *Solicitud en Oposición a: "Moción de Sentencia Sumaria"* instada por el señor De León Torres cumplía sustancialmente con los requisitos de forma establecidos en nuestras reglas. Por su parte, Wilmington cumplió con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra.*

Ahora bien, en su primer señalamiento de error, la parte apelante alega que erró el foro primario al limitar la notificación de la corrección de asientos de la Ley del Registro de la Propiedad solamente a terceros registrales. En ese sentido, aclara que en ningún momento alegó ser tercero registral y reitera que su derecho fue inscrito antes de que el banco inscribiera su hipoteca. Por lo que sostiene que, aun cuando el banco corrigió los asientos a los efectos de sobreponer su derecho para poder ejecutar la hipoteca, dicho proceso se realizó sin notificarle. Así, concluye que se vulneró su confianza en las constancias del Registro de la Propiedad cuando se procedió a la corrección de los asientos sin su consentimiento o sin una resolución judicial que ordenara la rectificación.

Sobre ello, Wilmington argumenta que el foro primario, en su función calificadora, determinó que no procedía la corrección de los asientos y que se había cumplido con todas las formalidades notariales en cuanto a la validez de la hipoteca y el pagaré. Añade

que, al momento de calificar los documentos, la titularidad del bien inmueble constaba inscrita a nombre de la señora Torres Valentín.[3]

De otra parte, en su segundo planteamiento de error, la parte apelante sostiene que incidió el foro primario al conceder la sentencia sumaria cuando la demanda era ilíquida por no cumplirse con el crisol de las regulaciones federales. En ese sentido, manifiesta que el pagaré establecía que de ejecutarse la deuda a través de la venta de la propiedad podrían incluirse los honorarios de abogados razonables y habituales pero sostiene que las regulaciones federales limitaban dicha cuantía basado en el criterio de que fuesen "*actually incurred*". Además, alega en su tercer señalamiento de error que el foro primario erró al ordenarle el pago de todas las sumas de dinero en controversia y determinar que, ante la eventualidad de que no hiciera efectivo el pago de las sumas adeudadas, ordenaba la ejecución y venta en pública subasta del bien inmueble, cuando el préstamo reverse era uno "*without recourse*".

Por su parte, Wilmington arguye que las cantidades reclamadas en el pleito de referencia fueron realizadas conforme a derecho, según establecido en la ley, la hipoteca y el pagaré, por lo que eran líquidas y exigibles. Alega que el cobro de un diez por ciento (10%) en honorarios de abogado es razonable y habitual en el mercado de las ejecuciones de hipoteca y añade que el intento de la parte apelante de impugnar la liquidez de la deuda se basa en la interpretación errónea del contenido de las regulaciones y no en el contenido mismo de estas ni de los términos del préstamo. Asimismo, aclaró que por tratarse de una acción *in rem,* no puede cobrarse deficiencia alguna de los bienes del titular de la propiedad

---

[3] No obstante, cabe resaltar que, dicho señalamiento de error no será discutido en los méritos toda vez que del expediente no se desprende que el señor De León Torres haya instado el procedimiento judicial correspondiente, a saber, sobre rectificación de asiento registral.

sino que el acreedor únicamente obtendrá aquella suma que se ofrezca por el mejor postor en subasta. *Le asiste razón.*

Tras un análisis detenido del expediente, así como de la normativa aplicable, concluimos que no existen controversias de hechos materiales que hagan improcedente, como cuestión de derecho, dictar sentencia sumaria en este caso. Nótese que el señor De León Torres sostiene que las cantidades reclamadas por Wilmington están en controversia, bajo el fundamento de que la deuda es ilíquida debido a que los honorarios no fueron "*actually incurred*" conforme a las regulaciones federales. Sin embargo, dicha alegación no es correcta toda vez que no existe disposición legal alguna que prohíba o limite reclamar el diez por ciento (10%) en honorarios de abogado en los procesos de ejecución de sentencia.

Así, según se desprende del expediente y de la *Sentencia* apelada, podemos colegir, en síntesis: (1) que la señora Torres Valentín se obligó voluntariamente a cumplir con los términos de un pagaré, el cual se otorgó originalmente a favor de Urban Financial Group; (2) que el referido pagaré fue garantizado mediante la constitución de una hipoteca voluntaria y la imposición de un gravamen sobre la propiedad de la señora Torres Valentín; (3) que la señora Torres Valentín falleció el 2 de marzo de 2022; (4) que el señor De León Torres advino titular de dicha propiedad mediante herencia; (5) que la escritura de hipoteca disponía que el acreedor podría requerir el pago inmediato de las sumas adeudadas aseguradas por la hipoteca si el deudor fallecía y la propiedad no era la residencia principal de al menos un deudor sobreviviente; (6) que, por tal razón, la deuda está vencida, y es líquida y exigible y; (7) que no existe controversia sobre las cantidades reclamadas por Wilmington.

En vista de ello, se configura en el marco fáctico todos los hechos esenciales que activan el derecho de Wilmington de

presentar la presente causa de acción contra el señor De León Torres. Por tanto, concluimos que no erró el foro primario en la aplicación del derecho y, en consecuencia, procede confirmar la *Sentencia* apelada.

**IV.**

Por los fundamentos antes esbozados, ***confirmamos*** la *Sentencia* emitida el 12 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Humacao.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones